IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
(SOUTHERN DIVISION)

| | |
|---|---|
| **TRUBRIDGE, LLC,** | ) |
| Plaintiff, | ) CASE NO.: 6:21-cv-003147 |
| v. | ) |
| **OZARKS MEDICAL CENTER,** | ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, TruBridge, LLC ("TruBridge"), and for its Complaint against Ozarks Medical Center ("Ozarks"), alleges as follows:

### THE PARTIES

1. Plaintiff TruBridge, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Mobile County, Alabama.

2. Defendant Ozarks Medical Center is a nonprofit corporation organized under the laws of Missouri with its principal place of business in West Plains, Missouri.

### VENUE AND JURISDICTION

3. This Court has original subject matter jurisdiction over this civil action pursuant to U.S.C. § 1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and TruBridge and Ozarks are citizens of different states.

4. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(1) because Ozarks resides in this judicial district and for the additional and independent reason that TruBridge

{05953263.5}    1

and Ozarks consented to venue in this judicial district for all actions brought to enforce or interpret the Master Services Agreement at issue in this civil action.

## FACTS

5. TruBridge provides business management, consulting, and management information technology services to rural and community healthcare organizations.

6. In July 2015, TruBridge and Ozarks entered into that certain Master Services Agreement whereby TruBridge agreed to furnish, and Ozarks agreed to accept and pay for, the "Services" set forth and defined in EXHIBIT A to the Master Services Agreement. Pursuant to the terms of the Master Services Agreement, it became effective upon both of Ozarks' and TruBridge's execution of the MSA on July 17, 2015.

7. TruBridge and Ozarks agreed to amend Section 4(b) and Section 5 of the Master Services Agreement effective March 2, 2016. A true and correct copy of the Master Services Agreement, as amended (the "Agreement"), is attached hereto as **Exhibit "A"**.

8. Pursuant to the Agreement, Ozarks agreed to pay TruBridge a monthly service fee of 6.75% of Ozarks' cash collections on private pay accounts during the service term of the Agreement. *See* Agreement at § 3.

9. Further, the Agreement provides:

> It is mutually understood that Customer must provide TruBridge with access to the data necessary to perform the Service(s) during the term of this Agreement. In the event Customer intentionally creates any impediment to such access (an "Impediment"), Customer agrees to pay TruBridge an amount equal to the prorated Service Fees that would have accrued for an affected Service during the remainder of the Service's then current term. The prorated Service Fees shall be calculated based upon the average monthly Service Fees for the affected Service provided in the previous six months. TruBridge shall provide Customer with written notification upon becoming aware of an Impediment and Customer shall have five (5) business days from the receipt of such written notice to cure the Impediment. In the event the Impediment is not cured within five (5) business days, the prorated Service Fees shall then become due and payable in full.

Agreement at § 12.

10. Pursuant to the Agreement, TruBridge and Ozarks agreed that the "Services" identified as a "Business Service" in EXHIBIT A to the Agreement "shall become effective upon the commencement of the Service and shall remain in effect for the initial service term specified in the Service's EXHIBIT A." *See* Agreement at § 2.A.

11. The initial service term for the Business Services identified in EXHIBIT A of the Agreement was one (1) year. TruBridge commenced providing the Business Services identified in EXHIBIT A of the Agreement on April 1, 2016. Thus, pursuant to the Agreement, the initial service term for the Business Services began on April 1, 2016.

12. TruBridge and Ozarks further agreed, pursuant to the Agreement, that upon expiration of the Business Service's initial service term, the Business Service "shall be automatically extended on an annual basis unless sixty (60) days prior to the expiration date of the initial service term, or any extended term, either party gives written notice of its intent to terminate the Service." *See* Agreement at § 2.A.

13. Pursuant to the Agreement, the one-year service term for the Business Services was automatically extended for an additional one-year term on April 1, 2017; April 1, 2018; April 1, 2019; and April 1, 2020.

14. Prior to April 1, 2020, Ozarks did not provide TruBridge written notice that Ozarks intended to terminate the Agreement.

15. On or around April 28, 2020 – several weeks after the Agreement's service term had already been automatically extended for an additional one-year term – TruBridge received a letter dated April 28, 2020, from Nichole Cook, on behalf of Ozarks, purporting to notify TruBridge that Ozarks is providing a "90 day notice" to terminate the Agreement "no later than

July 31, 2020". A true and correct copy of the letter dated April 28, 2020 is attached hereto as **Exhibit "B"**. The April 28, 2020 letter also stated that Ozarks decided "to not move [Ozarks'] current accounts out of the Expanse system to TruBridge for processing as there will be an interruption in working those claims with the ending of our engagement[,]" and that Ozarks "will monitor the continued status of self-pay balances with Trubridge, LLC [sic] in the Client Server until completion of all self-pay accounts thru [sic] the service date of 12/31/19."

16. In response, on June 4, 2020, TruBridge sent Ozarks a letter explaining the service under the Agreement is currently within a one-year renewal service term; the Agreement does not allow termination for convenience by either party during a renewal term; that the current service term would expire March 31, 2021; and that March 31, 2021 is the earliest date upon which Ozarks could terminate the Agreement, pursuant to the terms of the Agreement. Accordingly, TruBridge notified Ozarks that TruBridge is not accepting Ozarks' request to terminate the Agreement prior to the expiration of the current service term. TruBridge also informed Ozarks that TruBridge expects Ozarks' full performance per the terms and conditions of the Agreement, including providing TruBridge access to Ozarks' private pay accounts and payment of all amounts due and payable through the end of the current service term. TruBridge made clear that any reduction in accounts provided to TruBridge for private pay collection services is considered an "Impediment" as defined in Section 12 of the Agreement.

17. On June 8, 2020, Cook, on behalf of Ozarks, sent TruBridge an e-mail attempting to "clarify" Ozarks' purported termination of the Agreement in the April 28, 2020 letter. In this e-mail, Cook represented Ozarks is "electing not to renew our existing agreement which is set to expire July 16, 2020. Pursuant to the terms of the agreement, we have provided our 60 day notice of an intent not to renew this agreement for an additional one year term in our letter of April 28th."

18. Upon information and belief, well before July 16, 2020, Ozarks stopped providing TruBridge with all of its private pay account information required under the Agreement. Ozarks also failed to provide TruBridge access to Ozarks' electronic health record system, which is an alternate method of providing private pay account information.

19. On July 22, 2020, TruBridge's counsel sent Ozarks a letter demanding that Ozarks fully perform under the Agreement for the entire service term and that Ozarks immediately resume providing TruBridge private pay account information so TruBridge can resume providing Ozarks private pay management services under the Agreement. Additionally, TruBridge's counsel demanded that Ozarks provide TruBridge an accounting of the amounts it collected on private pay accounts that were not provided to TruBridge during the service term of the Agreement and that Ozarks pay TruBridge the amount TruBridge would have earned on those accounts had they been provided to TruBridge.

20. On or after July 23, 2020, Ozarks resumed providing TruBridge some private pay account information but only for patient discharges that occurred on or before December 31, 2019. The Agreement required Ozarks to provide TruBridge all of its private pay information until the end of the service term, which was through March 31, 2021.

21. On August 20, 2020, TruBridge's counsel sent Ozarks another letter explaining that although Ozarks had resumed providing TruBridge some private pay account information for the current service term, Ozarks was still in breach of the Agreement because Ozarks was only providing TruBridge private pay information for discharges that occurred on or before December 31, 2019. TruBridge's counsel also explained that Ozarks had failed to pay TruBridge the amount TruBridge would have earned from the accounts Ozarks did not provide to TruBridge during the

service term as required under the Agreement and had failed to provide an accounting of the accounts Ozarks did not provide TruBridge during the service term.

22. On April 12, 2021, TruBridge sent Ozarks a letter and invoice advising Ozarks that the total amount due for the service term ending March 31, 2021, as calculated under Section 12 of the Agreement, is $330,791.38. TruBridge's letter informed Ozarks that TruBridge expected Ozarks to pay the invoice by wire transfer within thirty (30) days of the invoice per the terms of the Agreement.

23. To date, Ozarks has not paid TruBridge the amount due under the Agreement, as calculated under Section 12 of the Agreement.

24. As a result of Ozarks' refusal to honor the Agreement and failure to perform its obligations under the Agreement, TruBridge has lost the financial benefit of the Agreement.

## COUNT ONE
## BREACH OF CONTRACT

25. TruBridge incorporates paragraphs 1 through 24 of this Complaint as if fully set forth herein.

26. The Agreement is a valid, binding, and enforceable contract between TruBridge and Ozarks.

27. The Agreement, pursuant to its terms, created mutual obligations on the part of TruBridge and Ozarks.

28. At all times relevant hereto, TruBridge fully performed all of its obligations under the Agreement, and was ready, willing, and able to perform all future obligations under the Agreement.

29. Ozarks breached the Agreement and failed to perform its obligations under the Agreement by, *inter alia*:

a.  failing to provide TruBridge all private pay information and data access required under the Agreement for the entire service term;

b.  failing to pay TruBridge for the amount it would have earned under the Agreement for accounts Ozarks did not provide TruBridge during the service term;

c.  failing to provide TruBridge with any private pay information during the service term for discharges occurring after December 31, 2019;

d.  failing to pay TruBridge its service fee of 6.75% of all its cash collections on private pay accounts through March 2021; and

e.  creating an Impediment, as defined in the Agreement, and failing to pay the resulting prorated service fees, as calculated in accordance with Section 12 of the Agreement.

30. As a result of Ozarks' various breaches and failure to perform under the Agreement, TruBridge has been damaged.

WHEREFORE, TruBridge demands judgment against Ozarks for compensatory damages, interest, costs, attorney's fees, and all other legal or equitable relief to which TruBridge is entitled.

## COUNT TWO
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

31. TruBridge incorporates paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32. The Agreement, pursuant to its terms, created mutual obligations on the part of TruBridge and Ozarks. The Agreement also imposed upon TruBridge and Ozarks an implied covenant of good faith and fair dealing, including the obligation to refrain from exercising a

judgment conferred by the terms of the Agreement in such a way as to evade the spirit of the transaction and/or or deny the other party expected benefit of the Agreement.

33. At all times relevant hereto, TruBridge fully performed all of its obligations under the Agreement, and was ready, willing, and able to perform all future obligations under the Agreement.

34. Ozarks breached the implied covenant of good faith and fair dealing by exercising its judgment in a way so as to fail to cooperate with, and wrongfully interfere with, TruBridge's performance under the Agreement, including *inter alia*:

    a. intentionally failing and refusing to allow (i) the download of all necessary patient encounter data from Ozarks' health information system ("HIS") to the service software and (ii) the upload of billing and collections activity from the service software to Ozarks' HIS, as required under EXHIBIT A to the Agreement;

    b. intentionally failing and refusing to provide TruBridge with access to all data necessary to perform the business services set forth in EXHIBIT A to the Agreement, for the entire service term of the Agreement;

    c. intentionally failing and refusing to submit all private pay account information necessary to allow TruBridge to provide Ozarks private pay management services under the Agreement; and

    d. despite TruBridge's good faith request, intentionally failing and refusing to provide TruBridge with an accounting of all amounts Ozarks collected on private pay accounts that were not provided to TruBridge during the service term of the Agreement.

35. As a direct and proximate result of Ozarks' breach of the implied duty of good faith and fair dealing, TruBridge has been damaged.

WHEREFORE, TruBridge demands judgment against Ozarks for compensatory damages, interest, costs, attorney's fees, and all other legal or equitable relief to which TruBridge is entitled.

**TRUBRIDGE DEMANDS TRIAL BY STRUCK JURY IN THIS CAUSE.**

Respectfully submitted,

*/s/ William R. Lunsford*
William R. Lunsford (Missouri Bar No. 71722)
J. Walton Jackson (*pro hac vice* motion to be filed)
Evan N. Parrott (*pro hac vice* motion to be filed)
T. Brannon Parker (*pro hac vice* motion to be filed)

Attorneys for Plaintiff TruBridge, LLC

**OF COUNSEL:**
**Maynard, Cooper & Gale, P.C.**
William R. Lunsford, Esq.
655 Gallatin Street Southwest
Huntsville, Alabama 35801
(t) 256.512.5710
(f) 256.512.0119
*blunsford@maynardcooper.com*

- and -

**Maynard, Cooper & Gale, P.C.**
J. Walton Jackson, Esq.
Evan N. Parrott, Esq.
RSA Battle House Tower
11 North Water Street, Suite 24290
Mobile, Alabama 36602
(t) 251.432.0001
(f) 251.432.0007
*wjackson@maynardcooper.com*
*eparrott@maynardcooper.com*

- and -

**Maynard, Cooper & Gale, P.C.**
T. Brannon Parker, Esq.
1901 Sixth Avenue North, Suite 1700
Birmingham, Alabama 35203
(t) 205.254.1000
(f) 205.254.1999
*brannon.parker@maynardcooper.com*


Please serve Defendant via certified mail, return receipt requested, at the following address:

        Ozarks Medical Center
        c/o Thomas Keller (Registered Agent)
        1100 Kentucky Avenue
        West Plains, Missouri 65775